### 30082. CENTER CHEMICAL COMPANY et al. v. PARZINI et al.

UNDERCOFLER, Presiding Justice.

This is a certiorari to the Court of Appeals. *Center Chemical Co. v. Parzini,* 134 Ga. App. 414 (214 SE2d 700). It was granted to review the ruling in Division 2 concerning a manufacturer's product liability under Code Ann. § 105-106 (Ga. L. 1968, p. 1166). *Held:*

1. We hold that Code Ann. § 105-106 imposes liability upon the manufacturer of personal property sold as new property, either directly or through a dealer or any other person, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property. The action is in tort and privity of contract is not necessary nor can the manufacturer avail itself of the usual contract or warranty defenses. See *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373); 63 AmJur2d 127, § 123. Code Ann. § 105-106 also states, "a manufacturer may not exclude or

limit the operation hereof."

2. We hold further that the claimant is not required to prove negligence under Code Ann. § 105-106. However, the manufacturer is not an insurer. As provided in Code Ann. § 105-106, the manufacturer is liable if his product, "when sold . . . was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained."

The phrase, "not merchantable and reasonably suited to the use intended" has been used ordinarily to establish warranties in sales contracts. It is not the usual language used to described the "strict liability in tort" which we have held Code Ann. § 105-106 imposes upon manufacturers of new products. See Restatement of the Law, Torts 2d, p. 347, § 402 A. Therefore we conclude the phrase does not incorporate into Code Ann. § 105-106 the various constructions placed upon it in construing sales contracts but was used in the context of strict liability. "All of the authorities supporting the doctrine of strict liability in tort have recognized the necessity that the plaintiff establish that there was a 'defect' in the defendant's product. However, the term 'defect' has been defined on a case-by-case basis and has generally not been found susceptible of any general definition. In fact, one authority has stated that 'no single definition of defect has proved adequate to define the scope of the manufacturer's strict liability in tort for physical injuries.' It has been said that the strict liability doctrine is applicable, in an action against the manufacturer, where it appears that there is a defect in manufacture consisting of use of material which may not be safely used for the purposes intended. Another criterion is that a product is defective if it is not reasonably fit for the ordinary purposes for which such products are sold and used." 63 AmJur2d 135, § 130. Accordingly, we construe the phrase "not merchantable and reasonably suited to the use intended" as used in Code Ann. § 105-106 to mean that the plaintiff must show that the manufacturer's product when sold by the manufacturer was defective.

3. "A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling . . . the seller is not liable.

Where, however, he has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . and a product sold without such warning is in a defective condition." Restatement of the Law, Torts 2d, p. 351, § 402 A, comment h.

4. Code Ann. § 105-106 imposes strict liability for defective products. It does not attach the condition that the defective product must be "unreasonably dangerous" which limitation is included in the classic definition of strict liability. We can not read this into the statute. Strict liability is not imposed under the statute merely because a product may be dangerous. Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use. We find nothing in Code Ann. § 105-106 that makes a manufacturer strictly liable for such products absent a defect. "No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole." Restatement of the Law, Torts 2d, p. 352, comment h.

5. "[I]f the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of the product, he is barred from recovery." 63 AmJur2d 155, § 150.

6. The facts here show Parzini and another person were attempting to open a plastic bottle of industrial drain cleaner consisting of almost pure sulphuric acid. Parzini held the bottle tightly while the other person removed the cap with pliers. The top came loose suddenly and the acid squirted over Parzini severely burning him. The jury returned a verdict for the defendant manufacturer. The Court of Appeals in reversing under Code Ann. § 105-106 stated, "Under merchantability may be considered such questions as whether a drain solvent consisting of 95% to 99-1/2% pure sulphuric acid is

unmerchantable and dangerous because too potent for ordinary use." In our opinion this is incorrect. Under Code Ann. § 105-106 the question is whether the product was defective in its manufacture, its packaging, or the failure to adequately warn of its dangerous propensities. If so, the question arises here as to whether the user knew of the defect and the danger it presented but proceeded unreasonably to use the product. Finally, if the issues required submission to a jury it must be determined whether the court's instructions were correct.

We vacate Division 2 and the judgment of the Court of Appeals opinion and remand the case for further consideration not inconsistent with this opinion.

*Judgment reversed. All the Justices concur.*

ARGUED JULY 9, 1975 — DECIDED SEPTEMBER 2, 1975.

*Neely, Freeman & Hawkins, Paul M. Hawkins, William Q. Byrd,* for appellants.
*William R. Parker,* for appellees.