68009, 68010. COAST CATAMARAN CORPORATION et al.
v. MANN; and vice versa.

BIRDSONG, Judge.

We granted the interlocutory application of appellant Coast Catamaran Corporation to review the trial court's order denying appellant's motion for summary judgment. This was an action to recover damages for personal injuries arising from appellee/cross-appellant's use of a sailboat manufactured by appellant. Appellee has filed a cross-appeal challenging the trial court's order denying his motion for partial summary judgment on the question of liability.

This case arises from a tragic accident that occurred on Lake Hartwell on June 8, 1980. Appellee and his brother, Joseph Mann, launched Joseph Mann's Hobie Cat 16 catamaran, a twin-hulled sailboat manufactured by appellant, into Lake Hartwell from the Cleveland boat ramp area. Shortly after launching the sailboat, the aluminum mast of the boat came in contact with a "hot," uninsulated electrical power line spanning a portion of the body of water at the Cleveland ramp area. The mast and various other metal components of the sailboat were energized as a result of the contact between the mast and the power line. The accident was witnessed by several people, including the father of both occupants of the sailboat. Joseph Mann died as a result of the incident. Appellee survived but received

severe electrical burns which resulted, among other things, in the amputation of his right arm.

At the time of the incident, appellee was a college chemical engineering student and had a general understanding of electricity and the conductivity of metals. He testified during his deposition that before and at the time of this accident he would not have intentionally contacted a metal pole with a power line. There is also considerable testimony in the record indicating that Joseph Mann, appellee, their father, and others discussed specifically the power line in question prior to launching the sailboat on the day of the occurrence. However, the record reveals that appellee is suffering from traumatic amnesia and has no recall of the events of June 8, 1980.

The sailboat in question is a sixteen foot catamaran designed with a "trampoline" connecting the twin hulls. The boat contains a 26-foot mast supporting two sails. In addition to the mast, the frame and assorted pieces of hardware are made of aluminum. The mast and metal components are patently visible. The hulls are composed of molded fiberglass packed with foam. It is undisputed that the boat is designed as a "wet" sailer with its primary emphasis on speed and sailing enjoyment. It is equally undisputed that the boat contains a considerable amount of conductive metal and, in the words of its designer, Hobie Alter, is not designed as a "high tension wire special" and cannot be sailed safely into a power line.

The mast of the sailboat contains a sticker with the following warning: "Caution. Aluminum mast and other metal components conduct electricity. Coming in contact and/or near an electrical power line can cause serious injury or death. Stay away from overhead electrical power lines when sailing and/or launching this boat." Similar warnings are contained throughout the instruction booklet that came with the boat and in certain promotional literature. The record demonstrates that appellant was aware for approximately ten years prior to this accident of several injuries and fatalities that had occurred as a result of contact of the aluminum mast of a Hobie Cat 16 with power lines. The record also contains, in the form of deposition testimony and affidavits, considerable evidence relating to the feasibility shown by research and development by appellant and others of replacing conductive metal with non-conductive materials, grounding the boat, and insulating the mast from the remainder of the boat.

Appellee brought this action against both appellant and the owner of the power line, Hart County Electric Membership Corporation, which is not involved in this appeal. The action against appellant is couched in both negligence and "strict liability" pursuant to OCGA § 51-1-11. A careful review of the allegations in the complaint and appellee's answers to interrogatories and supported by the evidence demonstrate that this is a classic "defective design" product liability

case. All of the allegations and evidence amassed by appellee relate to appellant's failure to design the Hobie Cat 16 so that it is grounded or insulated, or so that its occupants are otherwise protected from electrical shock resulting from the contact of the mast of the boat with an overhead power line. Appellee's motion for partial summary judgment requested that the trial court declare the sailboat defective, pursuant to OCGA § 51-1-11, as a matter of law. Appellant's motion for summary judgment was based upon the contentions that the evidence establishes as a matter of law that appellee assumed the risk of any injury resulting from contact of the boat's mast with the subject power line and that the evidence establishes as a matter of law that the boat was not negligently or defectively designed. We have carefully reviewed the considerable amount of evidence thoroughly developed by both parties with respect to the issue of appellant's potential liability for appellee's injuries. *Held*:

1. Contrary to appellant's contention, the evidence contained in the record is insufficient to establish the assumption of the risk defense as a matter of law. Assumption of the risk is applicable to product liability cases "[i]f the user or consumer discovers the [product's] defect and is aware of the danger [emanating from that defect], but nevertheless proceeds unreasonably to make use of the product. . . . [Cit.]" *Center Chemical Co. v. Parzini*, 234 Ga. 868 (5) (218 SE2d 580). Even assuming that the evidence in this case establishes appellee's subjective awareness of the alleged product defect, the trial court was correct in concluding that the evidence fails to demonstrate as a matter of law that he was aware of the danger created by the alleged defect on this particular occasion, because the record contains no direct evidence concerning appellee's knowledge and appreciation of the specific danger encountered on June 8, 1980. Compare *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95 (5) (303 SE2d 284). In *Whirlpool Corp.*, the plaintiff was barred from recovering because the evidence demonstrated that he knew of the product defect alleged therein, understood the danger flowing therefrom, and, under the circumstances of the case, had a legal duty to discover the existence of the allegedly defective product. Id. p. 102. In the present case, while there may be circumstantial evidence from which a trier of fact could infer that appellee must have known and understood the alleged defect and danger flowing therefrom prior to the incident, the evidence does not eliminate any dispute over this issue.

2. We agree, however, that the trial court erred in failing to grant appellant's motion for summary judgment. The evidence establishes without genuine issue as to any material fact (OCGA § 9-11-56) that appellee's injuries were not the result of any actionably negligent or defective design of the Hobie Cat 16.

"The manufacturer of any personal property sold as new prop-

erty . . . shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." OCGA § 51-1-11 (b) (1). "[T]he phrase 'not merchantable and reasonably suited to the use intended' as used in [OCGA § 51-1-11 means] that the plaintiff must show that that manufacturer's product when sold by the manufacturer was defective." *Center Chemical Co. v. Parzini*, supra, p. 869. "Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective. . . . [N]othing in [OCGA § 51-1-11] . . . makes a manufacturer strictly liable for such products absent a defect." Id. p. 870.

"Generally, " ' "if a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. . . . (H)e is under no duty to guard against injury from a patent peril or from a source manifestly dangerous." ' " [Cit.]" *Poppell v. Waters*, 126 Ga. App. 385, 387 (190 SE2d 815). Furthermore, while a product may be defective because the manufacturer has failed to warn the user of a latent danger arising from a reasonable use of the product (*Parzini*, supra (3)), "(i)t is well-established that there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, or of which the person who claims to be entitled to the warning has actual knowledge. . . . [Cit.]" *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44, 45 (248 SE2d 15).

The above basic principles of product liability law in this state have resulted in "two fundamental rules relating to the manufacturer's duty in designing a product: '(F)irst, the duty is one of reasonable care, under the circumstances; second, neither a manufacturer nor a seller is an insurer that his product is, from a design viewpoint, incapable of producing injury.' The first duty is satisfied if the product is reasonably safe for the use for which it is intended. The second rule is grounded on the proposition that virtually any article is capable of causing an injury when put to particular uses or misuses." *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699-700 (294 SE2d 541). Thus, if the product is designed so that it is reasonably

safe for the use intended, the product is not defective even though capable of producing injury where the injury results from an obvious or patent peril. *Stodghill v. Fiat-Allis Constr. Machinery*, 163 Ga. App. 811, 814 (295 SE2d 183). Compare *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (299 SE2d 897). Stated otherwise, if the product functions properly for the use intended, if the injury results from no malfunction due to design of any portion of the product, and if the danger attendant to the use of the product is obvious or patent, then the product is not defective as a matter of law. While in many cases the defense based upon the obvious and common nature of the peril will be a question to be determined by the jury, a manufacturer is entitled to judgment as a matter of law in plain and palpable cases. *Stodghill*, supra; *Greenway*, supra; *Hunt*, supra; *Poppell*, supra.

"The undisputed facts before the court below were that the [presence of the aluminum mast and danger resulting from its contact with high voltage power lines were] obvious and in fact actually observed by [appellee]." *Poppell*, supra at p. 388. The obvious nature of the defect in this case is not materially distinguishable from that in *Hunt*, supra (motorcycle without crash bars); *Poppell*, supra (bicycle without a headlight or front reflector); *Stodghill*, supra (bulldozer without protective metal cage surrounding the driver's seat); and *Greenway*, supra (dumpster without safety lid). The record is devoid of evidence indicating that the sailboat was not reasonably suited for the purpose for which it was designed, i.e., sailing. The evidence shows without dispute that the nature and height of the mast were readily observable. The alleged defect in the design of the boat, the ability of the aluminum mast and metal components of the boat to conduct electricity when contacted with a power line and transmit that electricity to the boat's passengers, results only in an obvious and patent peril to the user. Pretermitting any question concerning the adequacy of the warnings involved in this case, "[a]s the facts show that the [appellant] did not breach its duty to design and manufacture its product for the ordinary purposes for which it was intended, the trial court [erred in failing to grant] summary judgment for the [appellant]." *Hunt*, supra, p. 47.

3. In the subject product-design case, only semantics distinguishes the cause of action for negligence and a cause of action pursuant to OCGA § 51-1-11. Under the latter statute, appellee must show that the sailboat was "defective" (*Parzini*, supra) in its design, and the standard by which appellant's conduct in this regard is judged "is the traditional one of reasonable care. . . ." *Hunt*, p. 46. See also *Greenway*, supra, p. 700. We have held in Division 2 above that the Hobie Cat 16, as a matter of law, is not defective in design as a sailboat as contended by appellee. Therefore, appellant breached no duty of reasonable care owed to appellee. It follows the trial court erred in

denying appellant's motion for summary judgment on appellee's cause of action for negligence. OCGA § 51-1-2.

4. The trial court did not err in denying appellee's motion for partial summary judgment as to liability. Accordingly, appellee's cross-appeal is without merit.

5. Appellant's motion to dismiss the cross-appeal is denied.

*Judgment reversed in part and affirmed in part. Deen, P. J., Quillian, P. J., Banke, P. J., Sognier and Pope, JJ., concur. McMurray, C. J., Carley, and Benham, JJ., dissent.*

DECIDED JULY 10, 1984 —
REHEARING DENIED JULY 31, 1984 — 

*M. Glenn Frick, Totsy Nichols*, for appellants.
*Truett Smith*, for appellee.

CARLEY, Judge, concurring in part and dissenting in part.

I fully concur with the majority's affirmance of the denial of summary judgment to appellee-cross appellant. I also concur in the holding of Division 1 that genuine issues of material fact remain with regard to appellee's assumption of the risk. I must respectfully dissent, however, from the majority's reversal of the denial of summary judgment to appellant.

Since we are dealing with appellant-defendant's motion for summary judgment, all of the evidence must be construed most strongly in favor of appellee and against appellant. *Ray v. Webster*, 128 Ga. App. 217 (196 SE2d 175) (1973); *H. G. Hastings Co. v. Long & Patrick Nursery*, 166 Ga. App. 228 (303 SE2d 768) (1983); *Freeman v. Pumpco, Inc.*, 167 Ga. App. 312 (306 SE2d 385) (1983). Appellee produced, in opposition to appellant's motion, expert testimony that the sailboat, as designed, was defective. "The expert . . . testified that, in his opinion the [product] was [defective] . . . . In light of this testimony we find [an attack on the sufficiency of the evidence to support a verdict for the plaintiff] meritless. '(T)he testimony presented a jury question as to whether [the plaintiff's] injuries were caused by a . . . defect in the [product.] [Cits.]' [Cit.]" *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343, 347 (270 SE2d 883) (1980). See also *Inta-Roto, Inc. v. Guest*, 160 Ga. App. 75 (286 SE2d 61) (1981).

The majority would apparently discount this testimony by appellee's expert on the basis of "[t]he obvious nature of the defect in this case . . . ." In support of this "obvious defect" analysis, the majority holds that the instant case is "not materially distinguishable" from the following cases: *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44 (248 SE2d 15) (1978); *Poppell v. Waters*, 126 Ga. App. 385 (190 SE2d 815) (1972); *Stodghill v. Fiat-Allis Constr. Machinery*, 163

Ga. App. 811 (295 SE2d 183) (1982); *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698 (294 SE2d 541) (1982). All these cases relied upon by the majority deal with a product alleged to be defective because of the *absence of a tangible piece of safety equipment*. In each of the cited cases, the absence of the piece of equipment was readily apparent to the consumer. The asserted defect in the instant case *is*, in my opinion, "materially distinguishable" from the observable absence of a piece of equipment which would simply render the product safer. Here, the assertions are that the entire sailboat essentially became electrified when contact was made between the mast and electric wires. The potential electrification of essentially the entire product when a portion of it makes contact with an electric wire is, in my opinion, more nearly a "latent" defect in the existing design of the product itself and is not analogous to an "obvious" absence of tangible devices such as crash bars, headlights, a protective metal cage, or a safety lid which would merely render the product safer in certain events to be anticipated. I simply do not believe that it can be said on the record before us that, as a matter of law, the asserted defect in the instant case is not a "latent *unobservable* [one, presenting a danger] which [was] not obvious." (Emphasis supplied.) *Poppell v. Waters*, supra at 388.

Indeed, the latentness of the potential of its product for electrification was apparently recognized by appellant. It appears that the mast of the sailboat contained a warning of this potential danger. "There is no duty on the manufacturer or seller to warn of obvious common dangers connected with the use of a product. [Cit.]" *Vance v. Miller-Taylor Shoe Co.*, 147 Ga. App. 812, 813 (251 SE2d 52) (1978). Thus, appellant itself apparently deemed the potential for electrification of its sailboats to be a latent rather than an obvious common danger and accordingly chose to assume the duty to warn consumers against it. However, the existence of this warning against electrification does not demand that summary judgment be granted to appellant. Again, the evidence must be construed most strongly in favor of appellee and, on the record, I find nothing which would take the instant case outside the general rule that it is "a jury question whether or not the manufacturer was negligent in failing to place a warning in such position, color and size print or to use symbols which would call the user's attention to the warning or cause the user to be more likely to read the label and warning than not." Eldridge, Prods. Liability in Ga., § 2-24.

For the reasons discussed, I respectfully dissent from the reversal of the denial of summary judgment to appellant.

I am authorized to state that Chief Judge McMurray and Judge

Benham join in this opinion.