41531. MANN v. COAST CATAMARAN CORPORATION.
(326 SE2d 436)

WELTNER, Justice.

Timothy Mann was injured and his brother killed when the mast of their sailboat, a Hobie Cat 16, came into contact with an uninsulated, electrical power line traversing Lake Hartwell. Mann sued Coast Catamaran, the manufacturer of the boat, under theories of negligence and strict liability, claiming, among other things, that the design of the Hobie Cat is defective because it is not grounded or insulated against electrical contact.

The Hobie Cat 16 is a sixteen foot catamaran with twin fiberglass hulls and a twenty-six foot aluminum mast. A label is attached to the mast warning against contact with electrical power lines.

Prior to launching the boat, the Manns were aware of the power line, but somehow sailed the boat directly into it.

The trial court denied both parties' motions for summary judgment. The Court of Appeals reversed the denial of summary judgment to Coast Catamaran, holding that the sailboat is not defective in design because it is reasonably suited for its intended use. *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844 (321 SE2d 353) (1984). We granted certiorari to consider this ruling.

1. OCGA § 51-1-11 (b) (1), provides: "The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."

The phrase "not merchantable and reasonably suited to the use intended" was defined by this court in *Center Chemical Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975), where we held that to recover under strict liability, a plaintiff must establish that there is a defect in the product, and " '[a] product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling . . . the seller is not liable.' " 234 Ga. at 869.

Mann contends that the lack of grounding or insulation constitutes a design defect. The boat as manufactured was reasonably suited for its intended purpose of sailing. Because neither the lack of grounding or of insulation prevented the sailboat from functioning properly in its intended use, such cannot be considered defective design. Additionally, sailing the boat into a power line is "abnormal handling," and, under *Parzini*, can yield no cause of action. "Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use. We find nothing in [OCGA § 51-1-11] that makes a manufacturer strictly liable for such products absent a defect." 234 Ga. at 870.

2. As to the claims of negligence, we agree with the Court of Appeals that they are but re-statements of the claims relative to defective design, 171 Ga. App. at 848, and must be determined adversely to Mann.

*Judgment affirmed. Hill, C. J., Marshall, P. J., Clarke, Weltner, and Bell, JJ., and Judge Joseph J. Gaines concur. Gregory, J., dissents. Smith, J., disqualified.*

GREGORY, Justice, dissenting.

I respectfully dissent. The majority relies on *Center Chemical Co. v. Parzini*, 234 Ga. 868, 869 (218 SE2d 580) (1975), where it was held that "[a] product is not in a defective condition when it is safe for normal handling and consumption." The majority then held ". . . sailing the boat into a power line is 'abnormal handling' and, under

*Parzini,* can yield no cause of action."

Obviously no reasonable person would deliberately sail a boat into a power line knowing the danger of electricity. But experience teaches that power lines are a common feature on many lakes where sailing takes place. This record reflects Coast Catamaran had knowledge of previous incidents where its sail boats had contacted power lines resulting in injury. There is overwhelming probability such incidents will continue to occur. Sailors will bring their craft to lakes crossed by power lines. Some will not appreciate the danger and allow contact with power lines to take place. Others will be tossed about by sudden wind currents and thrown into power lines. Some will turn to avoid colliding with other boats and objects and contact power lines. There will be more injuries and deaths. Under the circumstances I believe it to be a jury question whether a mast which lacks grounding or insulation constitutes a defective design.

I would reverse.

DECIDED FEBRUARY 8, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Smith & Johnson, Truett Smith,* for appellant.

*Lokey & Bowden, Glenn Frick, Totsy Nichols, McClure, Ramsey & Dickerson, John A. Dickerson,* for appellee.

*Ben B. Mills, Jr., Gene Mac Winburn, Charles Ashman, Billy Moore, Paul Bennett, Foy R. Devine, J. Fred Jones,* amici curiae.