Jenia L. HAMLEY, Individually, and Jenia L. Hamley as mother and next of kin of Clayton Allen Hamley, Plaintiffs–Appellants,

v.

BECTON DICKINSON AND COMPANY, Defendant–Appellee.

No. 88–5946.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1989.

Decided Sept. 27, 1989.

W. Holt Smith (argued), Madisonville, Tenn., Edward M. Graves, Jr., Knoxville, Tenn., for plaintiffs-appellants.

L. Anderson Galyon, III (argued), Rebecca B. Murray, Kennerly, Montgomery & Finley, Knoxville, Tenn., for defendant-appellee.

Before ENGEL, Chief Judge, JONES, Circuit Judge, and WOODS, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Plaintiff, Jenia L. Hamley, appeals the district court's order granting summary judgment for the defendant in this product liability action. For the reasons that follow, we reverse the district court and remand for trial.

I.

In 1985, Hamley was employed as a medical assistant for a Georgia physician. On April 15, 1985, after taking a blood sample from a patient, Hamley inadvertently punctured one of her fingers while trying to recap (or "reshield") a needle manufactured by defendant-appellee, Becton Dickinson and Company (Becton). When Hamley pricked her finger, she contracted hepatitis B from the patient from whom she was drawing blood. In the process, she transmitted the disease to her then unborn child, Clayton Allen Hamley. In the instructions which accompanied the needle, Becton advised users either to recap the needle prior to disposing of it or to clip the top portion of the needle and discard both parts. The instrument which would be used to clip the top of the needle, "the destruclip," was sold separately by Becton. Because Hamley's employer did not purchase the destruclip, she was instructed to reshield the needle.

Both Hamley and Becton acknowledge that the needle is sharp, that the cap which

* The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

would be used to reshield the needle has a narrow opening and that, therefore, a danger exists that a user might stick herself while attempting to reshield the needle. Although Hamley admits that her employer warned her of the risks associated with reshielding needles, *i.e.*, needle sticks, contracting hepatitis, affidavits accompanying her motion for summary judgment indicate that not all medical care workers were aware of the dangers associated with needle stick injuries. Moreover, it is unclear whether, at the time of Hamley's injury, there was an accepted industry standard which dictated that a manufacturer should *not* advise users to recap needles prior to their disposal or that a manufacturer was under a duty to warn users of the dangers associated with needle stick injuries. Hamley contends that the needle's design was defective, that Becton never should have instructed users to reshield the needle because of the cap's narrow opening, and that Becton was under a duty to warn users of the risk of contracting hepatitis B from a needle stick injury. In response, Becton claims that it did not warn users of any risks associated with using the needles because the needles would be used by medical personnel who should be aware of the dangers and consequences of needle-stick injuries.

Because this is a diversity action, the court examined Georgia's strict liability statute which provides that:

The manufacturer of any personal property sold as new ... shall be liable in tort ... to any natural person who may use ... the property and who suffers injury to his person ... because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

Ga.Code Ann. § 51–1–11(b)(1) (1982). In examining Hamley's claim, the court relied primarily on *Coast Catamaran v. Mann*, 171 Ga.App. 844, 321 S.E.2d 353 (1984), *aff'd*, 254 Ga. 201, 326 S.E.2d 436 (1985), and *Poppell v. Waters*, 126 Ga.App. 385, 190 S.E.2d 815 (1972). The plaintiff in *Coast Catamaran* was injured when the

mast of his sailboat touched an uninsulated electrical power line which ran across the body of water upon which he was sailing. In the suit against the manufacturer, the plaintiff alleged that the boat's design was defective because the boat did not adequately protect from the risks of electrical shock. Although the trial court denied the manufacturer's motion for summary judgment, the Georgia Court of Appeals found that the danger resulting from contact with the aluminum mast to power lines was open and obvious. In reversing the trial court, the court of appeals held that since the sailboat was reasonably suited for its intended purpose, *i.e.*, sailing, the manufacturer was entitled to summary judgment. 321 S.E.2d at 356–57.

The plaintiffs in *Poppell* had purchased a bicycle for their child, who was struck by an automobile while riding the bicycle one night. The parents sued the manufacturer and contended that the bicycle was defective because it was not equipped with a headlight or front reflector. Since these devices were available on the market, the parents claimed that the manufacturer should have included a reflector on the bicycle and should have warned users that it would be dangerous to ride the bicycle at night. The court of appeals in *Poppell* held that the manufacturer had no duty to warn because the risk of being struck while riding an unilluminated bicycle is a patent peril. Since the bicycle functioned properly for its intended purpose and since the parents purchased the bicycle with knowledge of the "defect" (no headlights or reflectors), the court of appeals reversed the trial court's denial of the manufacturer's motion for summary judgment. 190 S.E.2d at 816–17.

The district court in the instant case concluded that, based on Ga.Code Ann. § 51–1–11(b)(1), *Coast Catamaran* and *Poppell*, Hamley was entitled to recover from Becton only if she established that the needle was defective when sold or that Becton was under a duty to warn her of the risks associated with needle stick injuries. If, however, it was determined that the risks from needle sticks are open and

obvious dangers, the district court reasoned that Hamley could not recover under either a strict liability or negligent "failure to warn" standard. After applying Georgia law to Hamley's claim, the court ruled that Hamley failed to prove that the needle's design was defective. Moreover, the court found that, whether or not there may have been a safer method to dispose of the needle, Becton was under no duty to warn Hamley of the dangers associated with needle stick injuries because these risks are open and obvious. Thus, because Hamley failed to prove that the needle had a defective design and because the court felt that Becton had no duty to warn users, the district court granted summary judgment for Becton.

## II.

Hamley contends that the district court should not have granted summary judgment for Becton because there remain genuine issues of material fact concerning whether Becton's needle was defective and whether Becton had a duty to warn users of the dangers associated with needle stick injuries. We must affirm a district court's decision to grant summary judgment if the evidence shows that there are no genuine issues as to any material facts and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Georgia law provides that, in general, manufacturers are " 'under no duty to guard against injury from a patent peril or from a source manifestly dangerous.' " *Orkin v. Dawn Food Products*, 186 Ga. App. 201, 366 S.E.2d 792, 794 (1988) (citing *Poppell v. Waters*, 126 Ga.App. 385, 387–88, 190 S.E.2d 815, 817 (1972)). In *Hahn v. Sterling Drug, Inc.*, 805 F.2d 1480 (11th Cir.1986), the Eleventh Circuit Court of Appeals examined a claim brought against the manufacturer of Campho–Phenique. The plaintiffs in *Hahn* were the parents of a child who was injured after inadvertently consuming the product. The parents claimed that the product should have contained express warnings that the medicine

should not be consumed by children. The manufacturer contended that it included warnings on the product and that, in any event, the parents were educated consumers who had read the label and ostensibly understood the risks involved with ingesting the product. The Eleventh Circuit rejected the manufacturer's claims and instead ruled that "the simple question is whether the warning is adequate, given the unsafe nature of the product." *Id.* at 1483. In reversing the district court's order granting the manufacturer's motion for a directed verdict, the court stressed that it was "appropriate for a jury to determine" the adequacy of the warning. *Id.*

In determining whether the manufacturer provided an adequate warning on a battery which had exploded and injured the plaintiff, the court in *Rhodes v. Interstate Battery System*, 722 F.2d 1517, 1519 (11th Cir.1984), stated that the "[f]ailure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer *or user*." In reversing the district court's order granting summary judgment for the manufacturer, the court of appeals stated that "a jury is to determine whether a product is defective, whether the user was aware of the danger, and whether his use of the product in view of this knowledge was unreasonable." *Id.* at 1521 (citations omitted).

Finally, in interpreting Georgia strict liability and negligence laws, the court in *Wells v. Ortho Pharmaceutical*, 615 F.Supp. 262 (N.D.Ga.1985), stated that according to Georgia's negligence laws, "a manufacturer having actual or constructive knowledge that use of its product entails non-obvious, foreseeable dangers has a duty to warn users of its product of these dangers." *Id.* at 295. With respect to strict liability under Georgia law, the court stated that a "manufacturer's failure to warn of the dangers in using a product may constitute a defect in the product for purposes of strict liability when the manufacturer 'has reason to anticipate that danger may result from a particular use.' " *Id.* at 296 (quoting *Center Chemical Co. v.*

*Parzini,* 234 Ga. 868, 869–70, 218 S.E.2d 580 (1975)).

■ The district court in the instant action determined that Becton was entitled to summary judgment, in part, because Hamley admitted that she was aware of the dangers associated with needle stick injuries. We agree with the district court's conclusion that, pursuant to *Coast Catamaran* and *Poppell,* Hamley would not be entitled to relief under Georgia law if the risks from needle sticks are open and obvious and if she continued to recap the needles despite her knowledge of these risks. However, in reviewing the record, we are unable to conclude that there is not an issue of material fact concerning whether contracting hepatitis B is an open and obvious risk associated with a needle stick injury. Indeed, the record is replete with contradictory evidence concerning the dangers of needle stick injuries, the date on which Becton was—or should have been—aware of the dangers, and, whether Becton had a strict duty to warn of the dangers. Finally, since *Hahn* and *Rhodes* suggest that a jury should determine whether the needle had a defective design, whether the risks from contracting hepatitis B from a needle stick are "open and obvious" and whether Hamley's use of the needle despite her knowledge of those risks was "unreasonable," we conclude that these factual disputes should be resolved at trial rather than in a motion for summary judgment.

### III.

Because there remain several disputes involving genuine issues of material facts, we accordingly REVERSE the district court's order granting summary judgment for Becton and REMAND for trial.