A92A0074. HIGHTOWER v. COX.
(418 SE2d 613)

BIRDSONG, Presiding Judge.

Defendant Stanley D. Hightower appeals from a jury verdict and judgment in this personal injury case, contending the trial court erred in denying him a directed verdict at the close of the plaintiff's case and that the jury verdict is not supported by any evidence, inasmuch as the evidence clearly showed the plaintiff assumed the risk.

Plaintiff Michael V. Cox attended an outing at Allatoona Lake given by appellant Hightower for employees and friends. Appellant Hightower had rented a houseboat and was operating it himself; he had picked up Mr. Cox and others on the lake shore to ferry them to the cove where the boat was to dock. As the houseboat neared the dock, Cox and two others dove off the houseboat. Appellant put the boat gear in neutral and then reverse so as to nudge the boat in place by the dock, and Cox was caught in the boat propeller and severely injured. *Held*:

Appellant contends the evidence established conclusively that

Cox "assumed the risk" (see *Abee v. Stone Mountain Mem. Assn.*, 169 Ga. App. 167, 169 (312 SE2d 142)), thereby entitling appellant to a directed verdict; and that the verdict is without evidence. Appellant asserts the jury and this court should accept his version of disputed facts and ignore the contrary evidence which is in favor of plaintiff and the jury's verdict.

Appellant contends the evidence showed that unbeknownst to him, Cox swam to the rear of the boat while appellant was still attempting to dock the boat, and that Cox, who was knowledgeable in the dangers of boats and propellers, was injured while he was attempting to climb into the boat at a place only 12-24 inches from the turning propeller, thereby voluntarily assuming the risk of any injury. Thus, says appellant, the evidence *demands* a finding that Cox is barred from any recovery. See OCGA § 9-11-50 (a).

However, the evidence is plainly disputed on the pertinent point. Two witnesses testified in effect that Cox was not attempting to climb back into the boat when appellant put the gear in reverse and the boat backed up, pulling appellant into the propeller and under the boat.

According to one witness who was in the water with Cox, the boat was a "good distance" away from the witness and Cox, and "looked like it was pulling up on shore"; the two swimmers decided to swim slowly to shore and eventually swam to "where we were about twenty feet to the right of the boat, back of the boat. And all of a sudden the boat started coming back. And [plaintiff] was swimming with his head down like a swimmer would and I was trying to get to him. . . . When I got to him, he pulled up and was trying to paddle back and it was too late, the boat was sucking him in. The boat, it really just, you know, every way that I went to get out of the way, it looked like the boat just—you know, there was no where to go, the water was pulling you in [sic] the boat was coming so fast at you. When it hit [plaintiff], it flipped him around in the water, threw him down straight under the water. My head hit the back of the boat. I was to the left of the [propeller]. It threw him to the right." The witness also said that when Cox first started swimming, "the boat . . . was kind of like sitting still, you thought it was stopped. . . . But as [plaintiff] put his head down, it started coming back. . . ."

The witness testified that when the boat first came into reverse, plaintiff was "a hundred feet away from the boat. A good distance away. But he was swimming hard and . . . [w]hen he came up, he never noticed it because it sounded like the same sound going forward." The witness testified that he thought the boat had docked when he and Cox started swimming to shore, but then, while Cox was swimming with his head down, appellant "slammed [the boat] into reverse hard." Cox pulled up and started back-paddling when he saw

the boat, but he was only about 10 or 15 feet from the boat and it was too late; "the boat sucked him in."

Another witness testified that he was on the boat when Cox dove into the water. The boat was "sitting there idling" when Cox was swimming in. Then the witness saw Cox when Cox was "five foot out. . . . He wasn't right there at the motor, he was out in the water . . . he was just sitting there in one spot then." Until appellant put the boat in reverse, the boat had been sitting still against the bank without moving.

The testimony of these two witnesses directly disputes appellant's contention that Cox had started to climb into the boat 12-24 inches from the propeller when he was struck by the propeller, and provides evidence from which the jury could find Cox was not barred by an assumption of risk and that appellant was liable for negligence. Accordingly, it cannot be said that the evidence *demanded* a directed verdict for appellant according to the statutory requirements for directed verdict found at OCGA § 9-11-50 (a), and the trial court did not err in denying directed verdict to appellant. *Mitchell v. Southern Gen. Ins. Co.*, 194 Ga. App. 218, 220 (390 SE2d 79).

Likewise, there was evidence to support the jury's verdict. On appeal, we do not weigh the evidence nor do we determine its sufficiency, but look only to see whether there was evidence to enable the jury to find as it did; wherever there is any evidence to support the verdict, all conflicts in evidence are resolved in favor of the jury's verdict and we are bound to affirm it. *Bridges v. Schier*, 195 Ga. App. 583, 584 (394 SE2d 408). This verdict was not contrary to the evidence.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

ON MOTION FOR RECONSIDERATION.

Appellant now asserts that "only the surviving plaintiff/actor's direct testimony of his subjective perceptions is relevant" to the question whether plaintiff is barred from recovery by his voluntary assumption of the risk.

Plaintiff's testimony is not entirely clear as to what he perceived. After some equivocal testimony, defense counsel asked plaintiff: "When you were two or three feet behind the rear of the boat the engine was in forward and the boat was moving in that direction and you knew the [propeller] on that boat was turning, correct? A. Yes, sir. To the best of my knowledge, that is true. . . . Q. So when you got within an arm's length of that ladder, the next thing that happened was that you heard the engine go again into reverse. . . . And . . . you felt the suction pull you into the propeller and up under the houseboat? A. Yes, sir."

This evidence shows the injury did not occur merely because plaintiff had come to within an arm's length of the propeller; rather, the injury occurred after defendant suddenly put the gear into reverse while plaintiff was near the boat. Therefore, this evidence, even standing alone, did not demand a verdict for defendant.

Moreover, appellant is incorrect in contending that only the plaintiff's direct testimony of his subjective perceptions is relevant to the analysis concerning the assumption of risk. The seminal question is a subjective one geared to the particular plaintiff and his situation and requires an inquiry into the risks which appeared to plaintiff at the time (*Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 846 (321 SE2d 353)) and which were in fact known to plaintiff or were so obvious that he must be taken to have knowledge of them (see *Roberts v. King*, 102 Ga. App. 518, 525 (116 SE2d 885)), so as to demand a conclusion that he "made a conscious and voluntary decision to proceed" in the face of that risk. See *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 824 (409 SE2d 524). This inquiry does not depend entirely on a plaintiff's testimony, particularly where other evidence raises an inference that his own perception was distorted.

In this case, plaintiff's testimony raises the question not merely whether he had knowledge of the danger, but whether he had an accurate perception of how the incident occurred. According to the other witnesses, plaintiff did not have full knowledge of how the incident occurred, because he was swimming with his head down and when he saw the boat coming toward him, it was too late. Plaintiff also testified: "There's a lot of things about the day that are vague. . . . [The things I have testified to are] all the truth to the best of my knowledge." According to other witnesses, appellant did not put the boat into reverse when plaintiff was within an arm's length of it, but did so while plaintiff was swimming with his head down. When the boat went into reverse it moved toward plaintiff; plaintiff stopped and looked up, but it was too late and the propeller sucked him under.

The sequence of events that resulted in plaintiff's being sucked under the boat was a question for the jury, as was the state of plaintiff's perception at the time. The jury could decide that plaintiff was not the best witness not only as to what happened, but as to whether he knowingly assumed a specific risk. There is even a question whether the case is one involving assumption of the risk. See *Beringause*, supra.

*Motion for reconsideration denied.*

DECIDED MARCH 20, 1992. —
RECONSIDERATION DENIED APRIL 30, 1992 — ▆▆▆▆▆▆▆

*Brinson, Askew & Berry, Robert L. Berry, Jr., I. Stewart Duggan,* for appellant.

*Gammon & Anderson, Joseph N. Anderson,* for appellee.