A89A1029. ENGLISH v. CRENSHAW SUPPLY COMPANY et al.
(387 SE2d 628)

McMURRAY, Presiding Judge.

Plaintiff Gary English brought this products liability action against Crenshaw Supply Company ("Crenshaw") and Fesco, Inc., and others which are not involved in this appeal. The complaint, as amended, alleged that, on August 1, 1983, plaintiff stepped upon scaffolds which failed, causing plaintiff to fall about 18 feet to the ground; that as a result of the fall plaintiff was permanently paralyzed from the neck down; that the scaffolds were negligently designed and manufactured by defendants; and that the scaffolds were inherently defective. It was also alleged that defendants failed to provide (1) instructions regarding proper use of the scaffolds or (2) warnings regarding the inherent dangers of the scaffolds. Defendants answered the complaint and denied any liability for plaintiff's condition.

Following discovery, defendants Crenshaw and Fesco, Inc., moved for summary judgment. The trial court granted summary judgment to each of these defendants and plaintiff appealed.

Viewing the evidence in favor of plaintiff, the party opposing the summary judgment motions, we find the following:

Plaintiff was an employee of a construction company. On the day in question, August 1, 1983, a Monday, he attempted to walk upon scaffolds which were attached to the side of a house.

The scaffolds were commonly called carpenters' brackets or nail-on jacks. They consisted of a triangular metal frame with keyholes and other holes for mounting. They were used to hold walkboards against the side of a house. According to Occupation Safety & Health Regulations of the Department of Labor, the brackets should be attached to a house with a bolt extending from the outside to the inside

of the wall; and they should be spaced no more than eight feet apart.

On July 29, 1983, a Friday, a co-employee of plaintiff put the brackets on the side of a house. The brackets were a red color. They did not have an identifying label affixed to them. They did not have a side arm brace.

The co-employee nailed the brackets to studs in the wall. The nails were put through the keyholes and holes in the brackets. Bolts were not used to attach the brackets to the house. The brackets were spaced between 12 and 18 feet apart. Aluminum walkboards were placed on the mounted brackets.

When plaintiff stepped on the walkboards, the brackets (acting like a claw hammer) pulled the nails out of the side of the house and plaintiff fell to the ground, breaking his neck.

Reviewing the depositions and affidavits submitted in support of, and in opposition to, defendant Crenshaw's and defendant Fesco, Inc.'s summary judgment motions, we find the following:

William P. Crenshaw, Jr., defendant Crenshaw's secretary/treasurer and chairman of the board, deposed that defendant Crenshaw started selling carpenters' brackets in the late 1960's or early 1970's; that defendant Crenshaw obtained such brackets from defendant Fesco, Inc. until 1972; that defendant Crenshaw sold the carpenters' brackets "pretty much as they made" them; that the carpenters' brackets were delivered unpainted and defendant Crenshaw painted them red. William P. Crenshaw, Jr., deposed further that every carpenters' brackets which defendant Crenshaw ever sold had a side arm attached to it. He also deposed that after purchasing the carpenters' brackets from defendant Fesco, Inc., defendant Crenshaw purchased carpenters' brackets from Stanley Iron Works, Inc., and Titan Manufacturing Company; that the Stanley brackets folded up—they were not similar to the carpenters' brackets used by plaintiff; that the carpenters' brackets purchased from Titan Manufacturing Company were similar to the carpenters' brackets used by plaintiff; but that Titan Manufacturing Company did not deliver the carpenters' brackets to defendant Crenshaw until August 1983. Finally, William P. Crenshaw, Jr., deposed that defendant Crenshaw did not purchase carpenters' brackets from Allenform, Inc., Ellis Manufacturing Company, Inc., Ladder Distributors, Inc., Saf-T-Green of Atlanta, Inc., JGA of Atlanta, Bil-Jax, Inc., or Waco International, Inc.

In a subsequent affidavit, William P. Crenshaw, Jr., averred that he cannot state whether the carpenters' brackets involved in this case were manufactured by defendant Fesco, Inc.: "Though Fesco, Inc. did manufacture carpenter brackets for sale by Crenshaw Supply Company in the early and mid-1970's, and said brackets manufactured by Fesco, Inc. bear some similarities to brackets [involved in this case], it

would be sheer speculation for me to identify the brackets [involved in this case] as being manufactured by Fesco, Inc."

Terry Ayers, president of Ayers Manufacturing, Inc., averred that neither Ayers Manufacturing, Inc., nor Titan Products, Inc. ("Titan") ever manufactured, designed or distributed the carpenters' brackets involved in this case. Concerning his knowledge of items manufactured by Titan, Ayers explained that Ayers Manufacturing, Inc., was purchased by Titan and that he remained in the management and development department of Titan until it closed its Atlanta office.

Oliver H. Sale, president of defendant Fesco, Inc., averred that defendant Fesco, Inc., never designed, manufactured or distributed the carpenters' brackets in question. He added that defendant Fesco, Inc., never even manufactured the type of carpenters' brackets involved in this case.

In a deposition given in connection with a workers' compensation proceeding, plaintiff's employer, Edward Lamar Jajko, deposed that he was not aware that carpenters' brackets should have been used with a bolt. In this regard, he added that nobody in the construction business knew how to install the brackets.

In that same deposition, Edward Lamar Jajko also deposed that the brackets were painted red; and that he purchased the brackets from "Atlanta Scaffolding Company" which was located in Doraville, Georgia.

Subsequently, in this proceeding, Edward Lamar Jajko deposed that, prior to August 1, 1983, he purchased all of his brackets from defendant Crenshaw; that the brackets could not be purchased anywhere else; and that defendant Crenshaw was located off Fulton Industrial Boulevard near the Charlie Brown Airport.

Concerning the discrepancy in his testimony, Edward Lamar Jajko explained that he always called defendant Crenshaw "Atlanta Scaffolding" and he averred that others referred to defendant Crenshaw by that name too. He explained further that he erroneously stated that defendant Crenshaw was located in Doraville because he confused the Peachtree Airport (in Doraville) with the Charlie Brown Airport (near Fulton Industrial Boulevard). As to his confusion, Edward Lamar Jajko stated that shortly before giving the deposition in the workers' compensation proceeding, he was in an automobile accident and suffered a concussion; that he was taking medication at that time; and that his memory was faulty.

In an affidavit, "Eddie" Jajko averred that defendant Crenshaw gave no verbal or written warnings of any kind concerning use of the brackets; and that "the side arms on the brackets would come off regularly during normal usage and re-use."

In another affidavit, "Eddie" Jajko averred that he never commingled his carpenters' brackets with those of any other contractor or

subcontractor.

Renee Jajko, "Eddie" Jajko's wife, averred that she kept the records of "Eddie" Jajko since 1977. A review of the records, Mrs. Jajko averred, yielded no reference to defendant Crenshaw.

David A. Crenshaw, defendant Crenshaw's president, deposed that defendant Crenshaw distributed a carpenters' bracket similar to the one used by plaintiff in the early 1970's. In this regard, he averred that defendant Crenshaw purchased the brackets in a "pre-manufactured" state and painted them red; that he did not know who manufactured the brackets; but that the brackets were equipped with side arms to give them "diagonal support." The deponent added that various scaffolding manufacturers identify their product by color; and that defendant Crenshaw uses the color red on its scaffolding and shoring. Finally, the deponent averred that beginning in 1983, defendant Crenshaw provided purchasers of its carpenters' brackets with "a Occupational Safety and Health Act list" regarding proper use of the brackets.

In an affidavit, David A. Crenshaw averred that after being deposed on July 5, 1985, he had an opportunity to review the business records of defendant Crenshaw; that prior to December 1972, defendant Crenshaw mainly purchased carpenters' brackets from "Waco Scaffold and Supply Company"; that beginning in December 1972, defendant Crenshaw began purchasing such brackets from defendant Fesco, Inc.; that defendant Crenshaw continued to purchase such brackets from defendant Fesco, Inc., through October 1976; that from November 1976 through April 1979, defendant Crenshaw purchased carpenters' brackets from "Ayers Manufacturing Company"; that, thereafter, beginning in May 1979, defendant Crenshaw purchased such brackets from Stanley Iron Works, Inc., until October 1980; that defendant Crenshaw again purchased such brackets from "Ayers Manufacturing Company" beginning in October 1980 and ending in May 1982; that from May 1982 through July 1983, defendant Crenshaw purchased a collapsible carpenters' bracket from Stanley Iron Works, Inc.; and that from August 1983 through May 1985, defendant Crenshaw purchased carpenters' brackets from Titan Products, Inc. The affiant averred further that defendant Crenshaw only purchased carpenters' brackets with support arms attached to them; that all such brackets were painted by defendant Crenshaw "in what is known as a Waco red color"; and that the brackets involved in this case "appear to be painted in a color other than Waco red." Finally, the affiant averred that defendant Crenshaw never manufactured a carpenters' bracket. Rather, the affiant stated, defendant Crenshaw merely purchased such brackets for later distribution.

In a subsequent affidavit, David A. Crenshaw averred that defendant Crenshaw moved to its present location near Fulton Indus-

trial Boulevard in 1973; and that defendant Crenshaw never operated a business in Doraville, Georgia and never operated under the name " 'The Atlanta Scaffolding Company,' 'Atlanta Scaffolding,' or 'Atlanta's Scaffolding Company,' or any name other than Crenshaw Supply Company."

In an affidavit, Edgar L. Crossett III averred that he made an extensive investigation in the Atlanta area to find " 'Atlanta Scaffolding' " or " 'Atlanta Scaffolding Company' " but was unable to find such an entity; that he was able to locate the type of bracket involved in this case at defendant Crenshaw; and that defendant Crenshaw was the only place of business in the Atlanta metropolitan area at which he was able to locate the type of bracket in question.

Finally, Richard Bryan, an engineer, averred in an affidavit that he examined a carpenters' bracket purchased from defendant Crenshaw on June 7, 1985; that the bracket was red in color and "quite similar" to the brackets involved in this case; that "[o]rdinary nails are inadequate to support the bracket on a typical wall stud . . . and if used, pose a grave danger to persons using the brackets." Bryan averred further: "In view of this danger, a bracket such as the one I inspected must be accompanied, when sold or leased, with instructions on some proper means of securing the bracket to the stud, since the plausible use of ordinary nails might be fatal to any user. Without such instructions, the brackets are death traps. . . . The bracket I inspected had a metal 'swing arm' attached to it. The primary function of the swing arm in this bracket is to prevent the planks from moving parallel to the surface of the wall, not away from it. . . . The swing arm provides only negligible support against force which pulls the bracket away from the wall. . . . The swing arm is also defectively designed and constructed. The brad which holds the swing arm on and allows it to move sideways is very weak. The hole at the end of the swing arm lacks a keyhole feature which allows the bracket to be removed from a wall by lifting it upwards. Due to the construction of the hole, the bracket can be removed only by applying great force to the swing arm, such as hammering on it. . . . As the result of this design, the swing arm is likely to pull off or separate from the bracket in repeated use. . . . The bracket I examined contains no warning that use without the swing arm is dangerous. If a component of a bracket [was] necessary to prevent it from coming out of a wall, yet [was] so flimsy as to separate during normal use, it would be necessary to warn users to discard the brackets after the swing arm detached." *Held*:

1. OCGA § 51-1-11 (b) (1) provides: "The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by

the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." The coverage afforded by this code section is invoked "when a manufactured item designed to be sold as new merchandise is initially offered for sale or lease, or otherwise marketed or placed in the stream of commerce. . . ." *Thorpe v. Robert F. Bullock, Inc.*, 179 Ga. App. 867, 872 (348 SE2d 55), aff'd, *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744 (353 SE2d 340). The code section "imposes strict liability upon manufacturers only." *Hatcher v. Allied Prods. Corp.*, 256 Ga. 100, 102 (344 SE2d 418). It does not apply to distributors. Id.

Defendant Crenshaw contends it is not a manufacturer as a matter of law and, therefore, it cannot be held liable under a strict liability theory. We disagree.

" 'One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.' Second Restatement of the Law of Torts § 400; *Pierce v. Liberty Furniture [Company*, 141 Ga. App. 175 (233 SE2d 33)] at 179." *Pepper v. Selig Chem. Indus.*, 161 Ga. App. 548, 550 (288 SE2d 693). In the case sub judice, defendant Crenshaw painted the carpenters' brackets red—defendant Crenshaw's identifying color. No other trademark or identifying color appeared on the brackets. Thus, construing the evidence in a light favorable to plaintiff, the party opposing defendant Crenshaw's summary judgment motion, we find a jury question as to whether defendant Crenshaw sold the brackets as if they were its own. *Pepper v. Selig Chem. Indus.*, supra. See also *Morgan v. Sears, Roebuck & Co.*, 693 FSupp. 1154, 1159 (N.D. Ga. 1988).

2. Next, defendant Crenshaw asserts that the evidence fails to show that it was the source of the brackets in question. In this regard, it argues that Eddie Jajko's statement that he purchased all of his carpenters' brackets from defendant Crenshaw should be disregarded because it conflicts with previous statements that he purchased all of his carpenters' brackets from "Atlanta Scaffolding." This assertion is without merit.

"The decision in *Lampkin v. Edwards*, 222 Ga. 288 (3) (149 SE2d 708), and cases following it, holding 'the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him,' when passing upon a motion for summary judgment, does not apply to contradictory statements by witnesses who are not parties to the litigation." *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144). Inasmuch as Eddie Jajko is a mere witness, not a party, his testimony, even though contradictory, cannot be resolved against plaintiff. Besides, Eddie Jajko offered a reasonable explana-

tion for the contradiction. Thus, even if he were a party, the testimony would not be construed against him. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680).

3. Defendant Fesco, Inc., asserts it is entitled to judgment as a matter of law because plaintiff is unable to demonstrate that it manufactured the brackets involved in this case. This assertion puts the cart before the horse. On summary judgment, the burden is on defendant Fesco, Inc., to demonstrate that it did not manufacture the product in question. Only after bringing forth evidence showing that it did not manufacture the product does the burden shift to plaintiff to show a genuine issue of material fact exists. As it is said: "The evidence required of the movant to make out his *prima facie* case should be uncontradicted and leave no room for controversy as to his right to judgment, and should show affirmatively that the plaintiff would not be entitled to recover under any circumstances. [Cits.] The evidence is insufficient to support summary judgment if it merely preponderates towards the defendant's theory, or if it only discloses that satisfactory proof of plaintiff's case on trial will be unlikely. [Cits.]." *Scott v. Owens-Illinois*, 173 Ga. App. 19, 21 (325 SE2d 402).

Via the affidavit of Oliver H. Sale, defendant Fesco, Inc., submitted direct evidence to show that it did not manufacture the carpenters' brackets or even the type of carpenters' brackets involved in this case. But that evidence was not uncontradicted.

First, we note that Eddie Jajko purchased all of his carpenters' brackets from defendant Crenshaw and he never commingled his brackets with those of any other contractor or subcontractor. Next, we note that all of Jajko's brackets were purchased from defendant Crenshaw prior to 1977. Until that time, according to David A. Crenshaw, defendant Crenshaw purchased carpenters' brackets from three manufacturers—Waco International, Inc., defendant Fesco, Inc., and "Ayers Manufacturing Company." William P. Crenshaw, Jr., deposed, however, that defendant Crenshaw did not purchase any brackets from Waco International, Inc.; and Terry Ayers averred that he did not manufacture the brackets in question. Moreover, William P. Crenshaw, Jr., deposed that the brackets manufactured by defendant Fesco, Inc., were similar to the brackets in question. In this regard, William P. Crenshaw, Jr., contradicted Oliver H. Sale's averment that defendant Crenshaw did not even manufacture the type of brackets involved in this case. Thus, piecing together the deposition testimony of Eddie Jajko, William P. Crenshaw, Jr., and David A. Crenshaw, as well as the affidavits of Eddie Jajko, Renee Jajko and David A. Crenshaw, and viewing this evidence in a light favorable to plaintiff, we find inconsistent circumstantial evidence sufficient to disprove the direct evidence submitted by defendant Fesco, Inc.

" "The rule is that a fact shown by direct, uncontradicted, reason-

able and unimpeached evidence cannot be disproved by circumstantial evidence consistent with such direct evidence.' *King v. Sharpe*, 96 Ga. App. 71, 78 (99 SE2d 283). On the other hand, direct evidence can be disproved by inconsistent circumstantial evidence. Thus, where direct evidence is contradicted by inconsistent circumstantial evidence, a jury issue is created." *Cobb v. Popeye's, Inc.*, 188 Ga. App. 443, 446 (373 SE2d 233).

By judging the credibility of the witnesses, and using the process of elimination, a jury could conclude that the inconsistent circumstantial evidence is sufficient to disprove the direct evidence submitted by defendant Fesco, Inc. Accordingly, we find the evidence insufficient to show conclusively that defendant Fesco, Inc., did not manufacture the carpenters' brackets involved in this case.

4. We cannot agree with defendants' assertion that the alleged defects in the brackets were not the proximate cause of plaintiff's injuries as a matter of law. In a products liability case, the "defect may be the proximate cause or it may be a concurrent proximate cause of injury. Such causation is a causation in fact, which defect directly caused or produced the injury in that the injury would not have occurred without the defect's existence." McIntosh, Eldridge's Ga. Products Liability, § 6-7. "According to Prosser, the 'but for' rule may be stated as follows: 'The defendant's conduct is not a cause of the event, if the event would have occurred without it.' Prosser, Law of Torts (4th ed. 1971), 239." *General Motors Corp. v. Davis*, 141 Ga. App. 495, 496 (1) (233 SE2d 825). Whether plaintiff would have fallen in the absence of the alleged defect is a question which can only be resolve by the trier of fact.

Whether plaintiff assumed the risk of using the brackets presents another jury question. "Assumption of the risk is applicable to products liability cases '(i)f the user or consumer discovers the (product's) defect and is aware of the danger (emanating from that defect), but nevertheless proceeds unreasonably to make use of the product. . . . (Cit.)' *Center Chemical Co. v. Parzini*, 234 Ga. 868 (5) (218 SE2d 580)." *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 846 (321 SE2d 353), aff'd *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436). The record in the case sub judice is devoid of any evidence tending to show that plaintiff knew it was dangerous to use the brackets with nails.

Finally, we must reject defendants' contention that the brackets were misused because they were attached without the swing arms. The affidavit of Richard Bryan presents, at the very least, a factual issue concerning the efficacy of the swing arms. According to Bryan, the swing arms were designed defectively and were likely to separate from the brackets with repeated use. Besides, the evidence suggests that the absence of the swing arms did not contribute to the failure of

the brackets since their primary function was to provide side-to-side support.

5. The trial court erred in granting summary judgment to defendant Crenshaw and defendant Fesco, Inc..

*Judgment reversed. Carley, C. J., Deen, P. J., Banke, P. J., Birdsong, Sognier, Pope and Benham, JJ., concur. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I agree with the trial court that defendant Fesco is entitled to summary judgment, but I concur with the majority of this court regarding Crenshaw.

As to the alleged original manufacturer Fesco, the undisputed evidence from Fesco's president is that Fesco "has never manufactured, designed, distributed or sold the . . . brackets or the type . . . brackets depicted in photographs labeled . . . P-4, P-5, and P-6 . . . Fesco Inc. has not been connected in any manner at any time with said . . . brackets."

Plaintiff testified in deposition that the bracket depicted in these three photos, which bracket is one from his employer's supply, was the kind of bracket in use when he fell. He could not say it was *the* bracket. He said the kind in use, however, was not like that depicted in photographs P-1, P-2, and P-3, which had an arm or brace attached. It was a new bracket purchased from Titan.

Crenshaw, who obtained unpainted brackets from Fesco until 1976 and painted them red before selling them, could not say that the bracket depicted (which had been identified as being like but not necessarily the bracket actually involved) was obtained from Fesco. The inescapable inference is that he could not state that the actual bracket in use when plaintiff fell in 1983 originated with Fesco. William Crenshaw also said the brackets bought from Fesco were similar to photographs P-1 through P-3, rather than P-4 through P-6.

Fesco was not Crenshaw's only source of brackets prior to the time of the tragedy. Ayers Manufacturing, Inc., Titan's predecessor, was a source following Fesco, from 1976 to 1979 and from 1980 to 1982. The representative of Titan, who had been president of Ayers and prior to its incorporation its sole proprietor, stated that none of these companies had ever manufactured, designed, distributed, or sold the brackets depicted in P-4 through P-6, but he did not mention P-1 through P-3.

There was no evidence such as could overcome the affirmative direct evidence from defendant Fesco excluding it as manufacturer of the brackets in use when plaintiff fell. This differs from *Scott v. Owens-Illinois*, 173 Ga. App. 19, 22 (3) (325 SE2d 402) (1984), where there was no affirmative evidence negating either manufacturer of the

two possible ones as the source of the exploding bottle.

Here the allegedly faulty brackets cannot be produced so as themselves to be identified as having been manufactured by some certain manufacturer. Nor can plaintiff prove even by circumstantial evidence and reasonable inferences that Fesco was the source of those brackets, as he cannot even prove by such a method that Fesco manufactured the brackets in P-4 through P-6, which he says are "like" the ones which caused his fall.

In order to give rise to a duty of Fesco towards English, English would have to be able to prove by a preponderance of the evidence, that is, that it is more likely than not, that Fesco manufactured the bracket being used when he fell. Fesco has shown that plaintiff cannot do that, and its own evidence establishes without legally cognizable contrary evidence that it did not.

Summary judgment for Fesco should be affirmed.

DECIDED NOVEMBER 1, 1989.

*Reynolds & McArthur, Charles M. Cork III,* for appellant.
*Neely & Player, Richard K. Hines V, Richard Kopelman, Taylor T. Daly, Drew, Eckl & Farnham, Samuel P. Pierce, Jr., Benny C. Priest,* for appellees.