## A99A0942. TUTEN v. COSTRINI.
### (518 SE2d 751)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Lynelle Tuten appeals from the trial court's grant of summary judgment to Dr. Nicholas Costrini, contending the trial court erred in finding: (1) that a consent form signed by her raised the rebuttable presumption that the consent was valid pursuant to OCGA § 31-9-6.1; and (2) that Tuten had failed to rebut that presumption. For the reasons set forth below, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

A defendant meets this burden by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plain-

tiff's case. . . . All of the other disputes of fact are rendered immaterial. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Phelps v. BellSouth Advertising &c. Corp.*, 235 Ga. App. 147, 148 (508 SE2d 779) (1998).

Construing the facts favorably to Tuten, the evidence shows that Dr. Costrini performed an upper endoscopy on Tuten to determine if she suffered from an obstruction of the esophagus. On the day of the procedure, Tuten read and signed a form entitled, "Consent to Surgical or Diagnostic Procedures." She had no questions. During the upper endoscopy, Dr. Costrini found a stricture and performed an esophageal dilation. Tuten suffered a tear of the esophagus, a recognized risk of such a procedure, which required immediate surgery and an extended hospital stay. Tuten does not contend that Dr. Costrini failed to meet the standard of care in the actual performance of the subject surgical procedure.

Tuten filed this action for medical malpractice asserting that Dr. Costrini deviated from the standard of care in failing to obtain her informed consent prior to performing the esophageal dilation. Thus, the only issue is her consent to the performance of the procedure, not the quality thereof. Dr. Costrini moved for summary judgment, contending that he had obtained valid consent on the basis of the consent form and the deposition testimony of Tuten's expert.[1] The trial court granted the motion.

1. The issue of informed consent is addressed by OCGA § 31-9-6.1, which, in relevant part, provides that a patient who is to undergo a surgical procedure under general, spinal or major regional anesthesia must consent to the procedure and must be informed, in general terms, of

(3) The material risks generally recognized and accepted by reasonably prudent physicians of infection, allergic reaction, severe loss of blood, loss or loss of function of any limb or organ, paralysis or partial paralysis, paraplegia or quadriplegia, disfiguring scar, brain damage, cardiac arrest, or death involved in such proposed surgical or diagnostic procedure which, if disclosed to a reasonably prudent person in the patient's position, could reasonably be expected to cause such prudent person to decline such proposed surgical or diagnostic procedure on the basis of the material risk of

---

[1] The affidavit of Dr. Joseph L. Womack was attached to the complaint in accordance with OCGA § 9-11-9.1.

injury that could result from such proposed surgical or diagnostic procedure.

A rebuttable presumption as to the validity of the consent is established if the consent is obtained in writing, signed by the patient and discloses in general terms the information set forth in the statute. OCGA § 31-9-6.1 (b) (2).

In this case, the consent form signed by Tuten tracked the statutory language:

> I acknowledge and understand that the following procedure(s) which has (have) been described to me is (are) to be performed on the patient: Upper endoscopy with possible biopsies and/or polypectomy and that as a result of the performance of the procedure(s) there is a material risk that the patient may suffer infection, allergic reaction, severe loss of blood, or loss of function of any limb or organ, paralysis or partial paralysis, paraplegia or quadriplegia, disfiguring scar, brain damage, cardiac arrest or death.

The consent form continued:

> I acknowledge and understand that during the course of the procedure(s) described in paragraph (A) (1) above, conditions may develop which may reasonably necessitate an extension of the original procedure(s) or the performance of procedure(s) *which are unforeseen or not known to be needed at the time* this consent is obtained. . . . I therefore consent to and authorize the persons described in the last paragraph of this consent to make the decisions concerning the performance of and to perform such procedure(s) the decisions concerning the performance of and to perform such procedure(s) as they deem reasonably necessary or desirable in the exercise of their professional judgment, including those procedures that may be unforeseen or not known to be needed at the time this consent is obtained.

(Emphasis supplied.)

This consent form gives valid consent for: (1) the procedures specified; (2) reasonably necessary unforeseen procedures; or (3) reasonably necessary procedures not known to be needed at the time consent was obtained. Clearly, the esophageal dilation was not specified in the consent form. Therefore, for Tuten to have validly consented to the dilation, it must have been either an unforeseen procedure or a procedure not known to be needed at the time her consent was obtained.

The evidence shows that the procedure was foreseeable. Dr. Costrini testified at his deposition that if the endoscopy revealed an obstruction, a dilation would most likely be necessary. However, since the consent form is read in the disjunctive, we must also examine whether the dilation was known to be needed at the time consent was obtained. The evidence shows that the stricture was discovered during the upper endoscopy, and consequently, the dilation was not known to be needed until that time. Accordingly, by statute, the consent form signed by Tuten created a rebuttable presumption that she gave her consent to Dr. Costrini to perform the esophageal dilation.

2. Moreover, Tuten failed to overcome the statutory presumption of valid consent through the testimony of Dr. Womack or the affidavit of Dr. Herz.

(a) The testimony of Dr. Womack did not overcome the presumption because his contradictory testimony must be construed against Tuten. Generally,

> [i]n ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. However, where the party opposing the motion presents contradictory testimony for which no reasonable explanation is provided, the contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) [(1986)] applies.

(Citation omitted.) *Ford v. Dove*, 218 Ga. App. 828, 829 (1) (463 SE2d 351) (1995). Under *Prophecy Corp.*, the contradictory testimony is construed against the party.[2] Although Dr. Womack is not a party witness, the *Prophecy Corp.* rationale applies to his contradictory testimony. Where a party's expert witness contradicts his affidavit testimony in his deposition, the contradictory testimony will be construed against the party on motion for summary judgment. *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608 (484 SE2d 257) (1997); *Ford*, supra.

In this case, Dr. Womack testified in his affidavit that Dr. Cos-

---

[2] Under *Prophecy Corp.*,
[t]he standard to be applied is: (1) determine whether the testimony of the party is contradictory, (2) if a reasonable explanation is offered for the contradiction, that testimony will not be construed against the party, (3) the burden is on the party giving the testimony to offer a reasonable explanation, and (4) whether this has been done is an issue of law for the trial judge.
*Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987).

trini's failure to obtain Tuten's informed consent for the dilation was a deviation from the standard of care. However, he subsequently testified at his deposition that the consent form gave valid consent. Tuten did not offer a reasonable explanation for Dr. Womack's contradictory testimony, and consequently, his testimony is construed against Tuten.

(b) The affidavit of Dr. Herz, offered in response to the motion for summary judgment, did not overcome the presumption of valid consent because it lacked probative value. Dr. Herz's affidavit is evaluated under the evidentiary standard for summary judgment, not the pleading standard for affidavits. See *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 66 (4) (424 SE2d 632) (1992) ("An expert affidavit, . . . has 'a lesser evidentiary standard to meet when used to fulfill the requirement of OCGA § 9-11-9.1 (a),' than when also relied upon as expert testimony . . . in the disposition of a motion for summary judgment.").

In a medical malpractice action, an " 'expert must base his opinion on medical records which are sworn or certified copies, or upon his own personal knowledge.' " *Humphrey v. Alvarado*, 185 Ga. App. 486, 487 (364 SE2d 618) (1988). OCGA § 9-11-56 (e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit . . . be attached" to the affidavit. This requirement is met in a medical malpractice action where the medical records are part of the record of the case and are clearly identified in the affidavit. *Crawford v. Phillips*, 173 Ga. App. 517, 518-519 (326 SE2d 593) (1985).

In this case, Dr. Herz's opinion regarding the standard of care is based on the medical records of Tuten. Yet, no medical records are attached or identified. No medical records are included in the record. As a result, Dr. Herz's affidavit lacks probative value, and the trial court properly disregarded it. Furthermore, Dr. Herz's affidavit fails to establish the elements of a medical malpractice action based on lack of consent, as set forth in OCGA § 31-9-6.1 (d), including that a reasonably prudent patient would have refused the procedure or chosen another alternative. Consequently, the affidavit does not overcome the statutory presumption of valid consent. OCGA § 31-9-6.1 (d).

Dr. Herz's testimony fails to rebut the presumption of valid consent for the additional reason that it contradicts the testimony of Tuten's other expert. Typically, the plaintiff in a professional malpractice action is not competent to testify to the standard of care and must rely on an expert to do so. As discussed above, if a party's expert witness contradicts his own testimony, that contradictory testimony will be construed against the party on motion for summary judgment. *Abdul-Majeed*, supra. Similarly, the rationale of *Prophecy*

*Corp.* and *Abdul-Majeed* also applies where a party's own expert witnesses offer contradictory testimony. The contradictory testimony will be construed against the party on motion for summary judgment. In this case, Tuten cannot create a question of fact by relying on the contradictory testimony of her own experts. See *Abdul-Majeed*, supra. The contradictory testimony of Tuten's own experts must be construed against her on motion for summary judgment.

We note that the case presented here, where a party offers the contradicting testimony of its own expert witnesses to create a question of fact on motion for summary judgment, is distinguishable from the case where a lay third-party witness offers contradictory testimony. See *Allen v. King Plow Co.*, 227 Ga. App. 795, 799 (4) (490 SE2d 457) (1997). In the latter case, the rule in *Prophecy Corp.* would not apply because the witness is not speaking on behalf of the party. We also note that *Prophecy Corp.* does not apply where the issue is the validity of an expert's affidavit for the purposes of OCGA § 9-11-9.1. See *Sawyer v. DeKalb Med. Center*, 234 Ga. App. 54 (506 SE2d 197) (1998).

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 28, 1999 — CERT. APPLIED FOR.

*Calhoun, Cerbone & Sapp, John R. Calhoun, Kenneth A. Calhoun,* for appellant.

*Beckmann & Pinson, Luhr G. C. Beckmann, Jr., William H. Pinson, Jr., Mark H. Glidewell,* for appellee.