A99A1255. EZOR v. THOMPSON et al.
(526 SE2d 609)

POPE, Presiding Judge.

Elisa Ezor appeals the trial court's order granting summary judgment to the defendants, Keith Thompson, M.D., Emory Clinic, Inc., and Emory Vision Correction Center, Inc., L.P., in the underlying medical malpractice action.[1] Ezor contends that the trial court erred by applying the self-contradictory testimony rule set forth in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) to the testimony of her expert. We agree and reverse.

Ezor contends that Dr. Thompson committed medical malpractice because her visual acuity was diminished after Dr. Thompson

---

[1] The trial court also granted defendants' motion for summary judgment on Ezor's battery claim; however, Ezor has not appealed that ruling.

performed five operations on her eyes over three months. Ezor attached Dr. James C. Hays's affidavit to her complaint in compliance with OCGA § 9-11-9.1. In his affidavit, Dr. Hays stated that performing multiple automated lamellar keratoplasty ("ALK") and radial keratotomy operations in such quick succession violated the applicable standard of care.

In his deposition Dr. Hays stated that the timing of the operations was against "conventional wisdom" and the "party line." Dr. Hays added that there was a possibility that Dr. Thompson was "way out ahead" of his peers. He further deposed that the second procedure, an ALK, was performed too soon after the first but that he was "not sure" that Ezor was injured as a result. In a second affidavit filed after his deposition and in response to defendants' motion for summary judgment, Dr. Hays stated that following his deposition he had examined and treated Ezor. He then reaffirmed his opinion that Dr. Thompson had violated the standard of care by not waiting three months before performing a subsequent operation on Ezor's eyes and that such violation caused permanent injury to Ezor's eyes.

The trial court determined that Dr. Hays's deposition contradicted his original affidavit and that his second affidavit submitted after his deposition did not adequately explain the contradiction. Reasoning that Dr. Hays's contradictory testimony was the only evidence in support of Ezor's malpractice claim, the trial court applied *Prophecy* and granted summary judgment to the defendants.

1. This Court has been inconsistent when deciding whether to apply the self-contradictory testimony rule to expert witnesses. At least six of our cases have either applied or refused to apply this rule to experts, thereby creating a conflict in the law.[2] In 1995, this Court twice held that the self-contradictory testimony rule does not apply to an expert's affidavit. *Ewers v. Cooper*, 217 Ga. App. 434 (457 SE2d 705) (1995); *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123 (460 SE2d 824) (1995). *Ewers* explained that an expert's affidavit is not the testimony of a party, and therefore a contradiction between that expert's testimony and the party's legal position was not necessarily fatal to the party's claims. 217 Ga. App. at 435. *Flanagan* held that an expert was not a party and therefore the rule did not apply. 218 Ga. App. at 126. In 1998, we again held that the self-contradictory testimony rule did not apply to the testimony of a non-party wit-

---

[2] Compare *Sawyer v. DeKalb Med. Center*, 234 Ga. App. 54, 56-57 (2) (506 SE2d 197) (1998); *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123, 125-126 (460 SE2d 824) (1995); *Ewers v. Cooper*, 217 Ga. App. 434, 435 (457 SE2d 705) (1995) (refusing to apply the self-contradictory testimony rule to expert testimony in different settings) with *Ford v. Dove*, 218 Ga. App. 828 (1) (463 SE2d 351) (1995); *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608, 609 (484 SE2d 257) (1997); *Tuten v. Costrini*, 238 Ga. App. 350, 353-354 (2) (a) (518 SE2d 751) (1999) (applying the rule to expert testimony).

ness, which in that case was an expert. *Sawyer v. DeKalb Med. Center*, 234 Ga. App. 56-57 (2) (506 SE2d 197) (1998).

Three months after *Flanagan*, without analysis or explanation, and without citation to either *Ewers* or *Flanagan*, this Court in *Ford v. Dove*, 218 Ga. App. 828 (1) (463 SE2d 351) (1995), applied the rule to an expert witness for the first time. Two other cases simply followed *Ford. Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608, 609 (484 SE2d 257) (1997); *Tuten v. Costrini*, 238 Ga. App. 350, 353-354 (2) (a) (518 SE2d 751) (1997).

Thus, this Court must now resolve the question of whether the self-contradictory testimony rule should be extended to expert witnesses.

Our Supreme Court has never addressed this precise issue. Although it denied certiorari in three cases applying the *Prophecy* rule to expert witnesses, " '[t]he denial of a writ of certiorari shall not be taken as an adjudication that the decision or judgment of the Court of Appeals is correct.' " (Citation omitted.) *Adair v. Traco Division*, 192 Ga. 59, 65-66 (14 SE2d 466) (1941). See also Ga. Const. of 1983, Art. VI, Sec. VI, Par. V.

But our Supreme Court has consistently enunciated different rules for handling the self-contradictory testimony of a party witness and a non-party witness. In 1895, when the Court established the self-contradictory testimony rule, it recognized that while a party has no power to control his witnesses' testimony:

> Where a party calls witnesses who conflict with each other in their sworn statements, he is not to be held responsible for the contradictions among them, for it is not within his power to prevent their occurrence; and a reviewing court will generally give to a party the benefit of the most favorable version of such testimony as a whole which the jury would be authorized to accept.

*Western &c. R. Co. v. Evans*, 96 Ga. 481, 486 (23 SE 494) (1895). The Court went on to explain, however, that while a party can control his or her own testimony, "a party testifying in his own favor has no right to be intentionally or deliberately self-contradictory; and, if he is so, the courts are fully justified in taking against him that version of his testimony which is most unfavorable to him." Id.

In 1975, the Supreme Court made plain that the self-contradictory testimony rule applies to parties and not non-party witnesses. *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144) (1975).

> [The] holding [that] "the testimony of a party who offers himself as a witness in his own behalf is to be construed

most strongly against him," passing upon a motion for summary judgment, does not apply to contradictory statements by witnesses who are not parties to the litigation.

Id. at 223. And the court has been clear that it was applying the rule to a "party" or "party-witness." *Prophecy*, 256 Ga. at 27-30. *Shiver v. Norfolk-Southern R. Co.*, 269 Ga. 168, 169 (496 SE2d 903) (1998); *Korey v. BellSouth Telecommunications*, 269 Ga. 108 (498 SE2d 519) (1998); *Hudgens v. Broomberg*, 262 Ga. 271 (416 SE2d 287) (1992).

This Court also has held that the self-contradictory testimony rule does not apply to non-party lay witnesses. In 1934, we held that the rule "applies only to the testimony of a party to the case, and not to the testimony of a witness who is not such a party." (Emphasis omitted.) *Henry v. Nashville Chattanooga &c. R. Co.*, 50 Ga. App. 49, 50 (1) (176 SE 906) (1934). See also *Painter v. Continental Ins. Co.*, 233 Ga. App. 436, 437-438 (1) (504 SE2d 285) (1998); *Allen v. King Plow Co.*, 227 Ga. App. 795, 799 (4) (490 SE2d 457) (1997); *English v. Crenshaw Supply Co.*, 193 Ga. App. 354, 359 (2) (387 SE2d 628) (1989).

In light of this long-standing precedent, we find no reason to apply a different rule to expert non-party witnesses. A party has no greater power to prevent contradictions between experts or within an expert's testimony than with regard to fact witnesses. Although an expert may be paid, those circumstances may be explored on the stand, and any question of bias is for the jury. As we have previously held, the fact that an expert's testimony may be contradictory goes only to the weight or credibility of the testimony and does not render it inadmissible. *Furse v. O'Kon*, 153 Ga. App. 703 (2) (266 SE2d 343) (1980); see also OCGA §§ 24-9-80; 24-9-85.[3]

Moreover, our opinion in *Tuten* reveals some of the problems in extending the rule in this manner. Although *Tuten* states that the party did not offer a reasonable explanation for the expert's contradictions, it does not state how this should be done. Should the party provide the explanation, or would the expert's explanation be required? To complicate the matter further, *Tuten* applied the contradictory testimony rule to contradictions between the testimony of two expert witnesses. In such cases, who decides which expert was correct and who determines which witness must offer the explanation for the inconsistency? Nothing in *Prophecy* justifies extending the rule in that manner, and doing so undermines one of the basic functions of the jury: determining the credibility of witnesses. *Turner v.*

---

[3] Also, Georgia law provides another remedy for possible perjured testimony by a witness. OCGA § 24-9-85 (b) states that under certain circumstances, testimony from a witness who has wilfully and knowingly sworn falsely shall be disregarded entirely.

*State*, 206 Ga. App. 683, 684 (426 SE2d 168) (1992).

The dissent seeks to narrowly draw the issue here and espouses a highly technical and unwarranted distinction between contradictory expert testimony involving an OCGA § 9-11-9.1 affidavit and other contradictory expert testimony. But there is no basis for such a distinction, and we should not enunciate two rules to be applied to contradictory expert testimony depending on the setting in which it occurs.

For the foregoing reasons, we hold that the self-contradictory testimony rule does not apply to the testimony of expert non-party witnesses. It follows that *Ford*, *Abdul-Majeed*, and *Tuten* must be overruled to the extent that they apply the self-contradictory testimony rule to an expert witness.[4]

2. Dr. Hays's affidavits together with his deposition raise issues of fact regarding Ezor's malpractice claim against the defendants. In his second affidavit, Hays fully reasserted his opinion that Thompson's performance was below the standard of care and that Ezor was injured as a result. We therefore reverse the decision granting the defendants' motions for summary judgment on the malpractice claim.

*Judgment reversed. Johnson, C. J., McMurray, P. J., Smith, Ruffin, Eldridge, Barnes, Miller, Ellington and Phipps, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

I must respectfully dissent from the opinion of the majority in this case because it mischaracterizes the issue to be decided in this appeal. Contrary to the majority's analysis, the issue is whether *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) applies, and summary judgment is thus appropriate, when the allegations of the expert's affidavit required by OCGA § 9-11-9.1 are subsequently contradicted by the affiant's own sworn deposition testimony, and the plaintiff has no other evidence of malpractice. This issue is not one of first impression as this Court has directly ruled in

---

[4] Our holding does not eliminate the possibility of summary judgment in a professional negligence case. A valid OCGA § 9-11-9.1 affidavit standing alone is not necessarily sufficient to withstand a motion for summary judgment. OCGA § 9-11-9.1 merely imposes a pleading requirement; it does not require that the affidavit be sufficient to satisfy the evidentiary standards of OCGA § 9-11-56. *Bowen v. Adams*, 203 Ga. App. 123 (416 SE2d 102) (1992); *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 287-288 (1) (378 SE2d 708) (1989). For example, an expert's opinion in his or her affidavit may be based on an assumed fact. If that fact is incorrect, summary judgment may result.

Also, it should be remembered that the purpose of OCGA § 9-11-9.1 "is to reduce the number of frivolous malpractice suits being filed. . . ." *0-1 Doctors Mem. Holding Co.*, 190 Ga. App. at 288 (1). Thus many cases where summary judgment would have been appropriate presumably have already been eliminated.

the affirmative thereon in three separate occasions, and it should do so here.

In the present case, Elisa Ezor contends that Dr. Keith Thompson committed medical malpractice because her visual acuity was diminished after Dr. Thompson performed five operations on her eyes over three months. Ezor attached Dr. James C. Hays' affidavit to her complaint in compliance with OCGA § 9-11-9.1. In his affidavit, Dr. Hays averred that performing automated lamellar keratoplasty operations in such quick succession violated the applicable standard of care.

However, in his deposition, Dr. Hays stated only that the timing of the operations was against "conventional wisdom" and the "party line." Dr. Hays added that the "party line" could be wrong and that there was a possibility that Dr. Thompson was "way out ahead" of his peers. He further deposed that he was "not sure" that Ezor was injured by the rapid succession of the operations. In a second affidavit filed after his deposition and in response to defendants' motion for summary judgment, Dr. Hays averred that following his deposition he examined Ezor and concluded that Dr. Thompson had violated the standard of care by not waiting three months before performing a subsequent operation on Ezor's eyes and that such violation caused permanent injury to Ezor's eyes.

In a very thorough order, the trial court determined that Dr. Hays' deposition contradicted his original affidavit and that his second affidavit submitted after his deposition did not adequately explain the contradiction. Since Dr. Hays' contradictory testimony was the only evidence in support of Ezor's malpractice claim, the trial court granted summary judgment to the defendants. For the following reasons, the trial court acted appropriately, and its judgment should be affirmed.

1. Under OCGA § 9-11-9.1, a plaintiff cannot assert a professional malpractice claim unless a supporting affidavit is filed with the complaint. In the affidavit, the plaintiff's expert must state the basis for the malpractice action. This Court has held in three separate malpractice cases involving OCGA § 9-11-9.1 affidavits that if the plaintiff's expert, after giving an affidavit in which a violation of professional standards is contended, later testifies that there was no violation of professional standards, then in that narrow circumstance, the defendant is entitled to summary judgment based on an application of *Prophecy*. See *Ford v. Dove*, 218 Ga. App. 82 (463 SE2d 351) (1995); *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608 (484 SE2d 257) (1997); *Tuten v. Costrini*, 238 Ga. App. 350 (518 SE2d 751) (1999). Certiorari was denied by our Supreme Court in all three of these cases.

The rationale behind this result is that the plaintiff is not gener-

ally entitled to proceed with a professional malpractice case unless the complaint is supported by an expert's affidavit as required by OCGA § 9-11-9.1. Where the plaintiff's expert changes his/her testimony to the extent that it negates his/her expert affidavit, the effect of allowing the plaintiff to go forward, absent some other expert opinion of malpractice, would be to negate the expert affidavit requirements of OCGA § 9-11-9.1. An expert's affidavit offered in response to a motion for summary judgment is evaluated under the evidentiary standard for summary judgment, not the pleading standard for affidavits. See *Drozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 66 (4) (424 SE2d 632) (1992). None of the cases relied upon by the majority involves expert affidavits under OCGA § 9-11-9.1. Thus, they have no application to the narrow issue herein involved. The following cases involve summary judgment motions and expert affidavits pursuant to OCGA § 9-11-9.1, and each applied *Prophecy* to contradictions of such affidavits by the affiant:

In *Ford v. Dove*, supra, the basis for the malpractice action was the allegation in the expert's OCGA § 9-11-9.1 affidavit that a cancerous tumor had not spread at the time of treatment and therefore could have been removed. At his deposition, the same expert abandoned that allegation and stated he could not assess the size of the tumor or whether it had spread at the time of treatment.

In *Abdul-Majeed v. Emory Univ. Hosp.*, supra, the basis for the malpractice action was the allegation in the expert's OCGA § 9-11-9.1 affidavit that, based on a reasonable degree of medical certainty, the decedent's death could have been prevented. However, at his deposition the expert recanted his earlier statement saying it was more likely that there was a possibility that the death could have been prevented.

In *Tuten v. Costrini*, supra, the basis for the malpractice action was the allegation in the first expert's OCGA § 9-11-9.1 affidavit that the patient had not given consent. Yet, at his deposition the first expert contradicted those allegations and said that the physician had obtained consent. This Court affirmed the trial court's ruling.[5]

The majority's contention that the position in this dissent is contrary to existing case law is without merit. The inaccuracy of that position is shown by the fact that it is the majority, not the dissent, which must overrule cases in order to prevail. As stated previously,

[5] Plaintiff then obtained a second expert's affidavit which the trial court ruled had no probative value, because no certified medical records upon which the expert relied were attached to the affidavit or contained in the record. *Crawford v. Phillips*, 173 Ga. App. 517, 518-519 (326 SE2d 593) (1985). In Division 2 (b) this Court stated thereafter that *Prophecy* applied to the second expert's affidavit. This statement was dicta, was incorrect and should be disapproved.

the majority mischaracterizes the issue involved. The true issue is whether *Prophecy* applies, and summary judgment is thus appropriate, where the contentions of the expert contained in the affidavit required by OCGA § 9-11-9.1 are subsequently contradicted by such affiant's own sworn testimony, and the plaintiff has no other evidence of malpractice in a summary judgment proceeding. This Court has directly ruled in the affirmative on this issue on three occasions. It has never ruled otherwise.

The contention of the majority that *Prophecy* does not apply because this case involves an affidavit is without merit. Both opinions cite cases which involve third-person affidavits, which are inapplicable to this case because they do not involve contradictions by the affiant of those affidavits required by OCGA § 9-11-9.1, *without which, a plaintiff could not proceed*. None of the cases cited by the majority addresses this issue, and all are factually distinguishable.

The author of *Abdul-Majeed* now cites *Ewers v. Cooper*, 217 Ga. App. 434 (457 SE2d 705) (1995), and *Flanagan v. Riverside Military Academy*, 218 Ga. App. 123 (460 SE2d 824) (1995) (cert. denied), cases which predate his opinion, as authority for his present majority opinion. These cases were not followed, addressed or overruled in *Abdul-Majeed*. Neither were they addressed or overruled in *Ford*, or *Tuten*, and that was certainly for the same reason, that in all three cases it was recognized that *Ewers* and *Flanagan* are factually distinguishable, and that they involved different issues from that presented in *Ford*, *Abdul-Majeed* and *Tuten*.

The results in *Ewers* and *Flanagan* are perfectly appropriate, but they simply have no application to the facts or issue (contradiction by affiant of OCGA § 9-11-9.1 affidavit) involved in *Ford*, *Abdul-Majeed*, *Tuten*, or the present case:

*Ewers v. Cooper*, supra, involved pleadings in a third-party complaint. *The expert did not contradict his own affidavit; the defendant/third-party plaintiff asserted contradictory positions.* There we held that a party can assert inconsistencies in pleading, and the rule applies even when an OCGA § 9-11-9.1 affidavit must be filed because the nature of third-party practice assures some degree of inconsistency.

*Flanagan v. Riverside Military Academy*, supra, *did not involve an affidavit required by OCGA § 9-11-9.1*. Moreover, this Court found the expert's affidavit and his deposition testimony were not even contradictory: "[W]e reject the defendants' contention that Burton's affidavit and deposition testimony are contradictory." Id. at 125-126.

In *Shiver v. Norfolk-Southern R. Co.*, 269 Ga. 168 (496 SE2d 903) (1998), Norfolk-Southern argued that the contradictory testimony rule applied to Shiver's unsworn statement to a claim agent. The Supreme Court held that it was error to apply the contradictory testi-

mony rule to unsworn, extrajudicial statements. *Prophecy* applied only to self-contradictory sworn testimony. In *Korey v. BellSouth Telecommunications*, 269 Ga. 108 (498 SE2d 519) (1998), the Supreme Court held that it was error to fail to look to the record as a whole, not just the contradictory testimony, to determine whether summary judgment was appropriate. In *Gentile v. Miller, Stevenson &c.*, 257 Ga. 583 (361 SE2d 383) (1987), the Supreme Court, agreeing that *Prophecy* applied to movants as well as respondents, explained how to apply a party's reasonable explanation for a contradiction to the evidence. We note that *Miller v. Douglas*, 235 Ga. 222 (219 SE2d 144) (1975) predates *Prophecy*, supra, and therefore does not address applying *Prophecy* in the circumstances presented by this case.

In *Tuten*, supra, this Court distinguished the cases relied upon by Ezor: *Allen v. King Plow Co.*, 227 Ga. App. 795, 799 (4) (490 SE2d 457) (1997) (*Prophecy* does not apply to *lay* third-party witnesses) and *Sawyer v. DeKalb Med. Center*, 234 Ga. App. 54 (506 SE2d 197) (1998) (validity of original OCGA § 9-11-9.1 affidavit questioned in renewal action). See also *Painter v. Continental Ins. Co.*, 233 Ga. App. 436, 437-438 (1) (504 SE2d 285) (1998) (*Prophecy* inapplicable where lay third-party witness' testimony contradicted party's testimony). *English v. Crenshaw Supply Co.*, 193 Ga. App. 354 (387 SE2d 628) (1989), relied upon by the special concurrence, similarly found that *Prophecy* was inapplicable to the testimony of lay third-party witnesses.

In comparison, *Ford*, *Abdul-Majeed*, and *Tuten* are directly on point with the present case — addressing the effect on summary judgment when the allegations of the affidavit required by OCGA § 9-11-9.1 are subsequently contradicted by the affiant's own deposition testimony. The present case is not distinguishable from the precedent set by *Ford*, *Abdul-Majeed*, and *Tuten* on either legal or factual grounds which might justify overruling them. Without such grounds, it is inappropriate to overrule those cases because we do not start fresh with each case. This case is the fourth to address this very issue, with the third (*Tuten*) having been decided less than six months ago. Our Supreme Court has denied certiorari in *Ford*, *Abdul-Majeed*, and *Tuten*. Because there has not been a change in the law since these three cases were decided, the cases are not factually distinguishable from the present case and the Supreme Court has not chosen to review the precedent cases on petition for certiorari, stare decisis compels us to follow the prior case law.

Our Supreme Court has recently recognized that

stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it

remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it.

*Etkind v. Suarez*, 271 Ga. 352, 357 (519 SE2d 210) (1999). There has been absolutely no analysis or rationale offered by the majority which demonstrates that the prior decisions were erroneous and should be overruled on the basis of their contentions or analysis. Instead, they rely on cases which are factually and legally distinguishable and do not involve the same issue. It is inappropriate to overrule these cases based solely on arguments which have previously been rejected by our Supreme Court. Our Supreme Court has thus far chosen not to review the *Ford, Abdul-Majeed,* or *Tuten* decisions which this dissent follows and the majority overrules.

Given this history of the Supreme Court's refusal to review this issue, and absent any rational analysis supporting the overruling of these cases, this Court is engaging in the rawest form of speculation and prediction to assume that our Supreme Court will change its position on this issue and overrule those cases it has declined to address in the past. It is certainly within the authority of the Supreme Court to reverse all three cases which this dissent has followed, and they are free to do so. Given this record however, this Court should not do so on the basis that the Supreme Court might do so.

*Tuten, Abdul-Majeed,* and *Ford* are valid precedent and are buttressed by the rationale underlying the *Prophecy* analysis. The trial court did not err in construing the contradictory testimony of Ezor's expert against her.

2. Ezor argues in the alternative that the trial court erred because the contradiction was explained. However, Ezor did not explain the contradiction in the trial court but instead argued that Dr. Hays' deposition testimony did not contradict his affidavit testimony. Therefore, it cannot be said that the trial court abused its discretion in holding that Ezor failed to explain the contradiction or in granting the defendants' motion for summary judgment.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED DECEMBER 3, 1999 —

*Ezor & Olens, Samuel S. Olens, Christopher J. McFadden,* for appellant.

*Allen, Weathington & Reeves, Hunter S. Allen, Jr., Gary R. McCain, Scott A. Miller*, for appellees.